## HONAKER et al. v. REEVES COUNTY WATER IMPROVEMENT DIST. NO. 1.

### No. 4086.

Court of Civil Appeals of Texas. El Paso.
May 1, 1941.

Rehearing Denied May 29, 1941.

J. E. Starley and J. H. Starley, both of Monahans, for appellants.

Robert L. Holliday and Harold L. Sims, both of El Paso, for appellee.

SUTTON, Justice.

This is an appeal from the District Court of Reeves County.

The parties here will be designated as in the trial court.

Mrs. C. M. Honaker, individually and as community survivor of the estate of C. M. Honaker, and her three sons, as plaintiffs, sued the Reeves County Water Improvement District No. 1, as defendant, and sought to enjoin the defendant from cutting off a continuous flow of water for stock and domestic purposes through lateral canals across plaintiffs' lands. The trial was to the court without a jury. The court rendered judgment against the plaintiffs and that they take nothing. From that judgment this appeal has been perfected.

The defendant is a municipal corporation organized under the Reclamation Laws of the State of Texas.

The plaintiffs alleged, and the facts show, they are the owners of 60 acres of land situated in and a part of the defendant District. Toyah Creek, a natural stream, runs across plaintiffs' lands, and through it originally ran a stream of water from which stock and domestic water was obtained and from which plaintiffs' lands were irrigated. This was the condition prior to 1907. In 1907 Toyah Valley Irrigation Company was

organized and took over the system of irrigation canals for the purpose of operation, and for the purpose of delivering water to the lands in the area, including plaintiffs' lands. To each landowner the Company executed and delivered a water contract. Plaintiffs' lands are situated in the lower end of the District and beyond the main canals and are served by lateral canals. The Toyah Valley Irrigation Company and the present defendant District, as successor of the former Company, delivered water for irrigation purposes under the contract at stated and fixed intervals, and at all times delivered a stream of water sufficient for stock and domestic purposes. On July 16, 1940 the Board of Directors for the defendant passed an order directing and ordering that the water for stock and domestic purposes be discontinued as a continuous flow. The plaintiffs further allege that on such date there was an ample and sufficient supply of water for all purposes, and that there is such supply at all times, except for short periods of time during two or three years out of each five. They sought to permanently enjoin the operation and enforcement of the order of July 16, 1940. They claimed discrimination and larger and greater wastes in other parts of the District.

The defendant answered with a general demurrer; a misjoinder of parties and lack of parties; certain special exceptions; a general denial; and a special answer of some length, which we deem unnecessary to here set out in any detail.

The plaintiffs answered with a supplemental petition, likewise unnecessary to summarize.

The plaintiffs have twenty-eight assignments of error and seven propositions briefed thereunder, but, as said by plaintiffs in their brief, the case resolves itself into one general proposition which they state as follows: "Whether or not the order and acts of the defendant District of July 16 (or as subsequently revised) was a reasonable rule and regulation under the administrative authority of the defendant District when reviewed from the circumstances and conditions existing at the time of the acts complained of."

During the trial of the case the order of July 16, 1940 was revised or amended to meet the original intention of the defendant, whereby it tendered a supply of water for stock and domestic purposes every twelve and one-half days.

The plaintiffs assert no riparian or prescriptive rights. They rely upon their asserted unreasonableness of the order of July 16, 1940, and the claimed interpretation of the water contract made in 1907. The claimed interpretation is based upon the furnishing of a continuous supply of stock and domestic water through the years.

We think the determination of the case depends upon the proper interpretation of the water contract of 1907. The plaintiffs and their predecessor prior to 1907 enjoyed certain riparian rights, among which were the primary rights of water for stock and domestic purposes. These rights were vouched to them under the common law and brought forward for them in the statutes of the State. This is not denied nor disputed by the defendant. The landowners in 1907 deemed it best and advisable to alter and modify the natural rights they enjoyed for benefits that were believed would accrue as a result of the more economical distribution and supply of the water available, and the better conservation of it. In consideration of the benefits hoped to be derived they were called upon to assume some burdens incident thereto and submit to a restriction and regulation of the rights previously enjoyed. The water contract contains this provision: "The second party obligates himself to conform to all rules and regulations established by said Irrigation Company and to accept his water at the times designated by said Irrigation Company and to confine the use of said water to the irrigation of the land mentioned in this contract, for the stock kept thereon and for domestic purposes. * * * The manner of withdrawing and regulating the supply of water from the canals of said Irrigation Company shall be prescribed by said Irrigation Company and shall forever be under its control and management."

The amount of water agreed to be supplied under the contract was the maximum of 65,340 cubic feet per acre per annum. In cases of shortage it was stipulated the available supply should be prorated. That is nothing more nor less than the law. It is further recited: "It is expressly understood that the Toyah Valley Irrigation Company is a common carrier of water, and that it has only undertaken to convey through the ditches controlled by it to the land mentioned in this contract the water that such land is entitled to, which the sec-

ond party (plaintiffs' predecessor) has asserted to be 65,340 cubic feet of water per annum for each of the acres of land mentioned in this contract, which said water the landowner claims to belong to said lands * * *."

█ The plaintiffs agree that the defendant District under the law has a right to make reasonable rules for the regulation of the use and distribution of the water supply available in the District.

█ We regard the contract as unambiguous and susceptible of interpretation within its four corners. The landowner preferred and agreed that his rights to stock and domestic water might be limited and subjected to reasonable rules for the greater benefits to be derived from the irrigation of his farm land as the result of a more improved and modernized system of water supply conservation and distribution.

It will be noted the contract does not provide for the supply of stock and domestic water in any particular manner but the undertaking is to supply a maximum of 65,340 cubic feet per annum, which amount he asserts to be sufficient. It limits the use of the water supplied "to the irrigation of the land .mentioned in this contract, for stock kept thereon and for domestic purposes." The contract prescribes the penalties for the diversion of the water to any other purpose. It obligates the landowner "to accept his water at the times designated by said Irrigation Company." We think this provision evidences a clear intention to supply it at stated intervals and not continuously. It would be quite a different situation should the contract provide for the delivery of water for stock and domestic purposes and for irrigation, the water for irrigation to be supplied at such times as may be designated by the Irrigation Company, or some similar language. The provision of the contract is to supply the water the landowner is entitled to at times designated by the Irrigation Company, which water may be used only for irrigation, stock and domestic purposes.

█ We, therefore, hold under the terms of the contract and the facts here, as found by the trial court, the rule and order made is a reasonable one for the supply, use and enjoyment of the water plaintiffs are entitled to. We think it clearly contemplated by the parties the use of the stock and domestic water would, under the set-up, become more onerous. The defendant District is under obligation to supply stock and domestic water, and unreasonable rules might be promulgated by it which might give rise to legal and just complaints, but such we believe not to be the case here now.

As agreed by the parties, we regard the issue here discussed decisive of this case and the other questions raised immaterial. We have, nevertheless, given plaintiffs' other assignments and propositions careful consideration and overrule them.

We find no error in the action and judgment of the trial court, and the judgment is affirmed.